UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

**LEAF CAPITAL FUNDING, LLC,**

        **Plaintiff,**

v.                                                  Case No: 6:23-cv-933-JSS-DCI

**KIM Y. DAWSON and RAINMAKER**
**HEALTH SOLUTIONS, INC.,**

        **Defendants.**
_____

# ORDER

This cause comes before the Court for consideration without oral argument on the following motion:

> **MOTION:** Plaintiff's Second Motion for Default Judgment (Doc. 36)
>
> **FILED:** March 7, 2024
>
> **THEREON** it is **ORDERED** that the motion be **DENIED without prejudice**.

## I. Background and Procedural History

Leaf Capital Funding, LLC (Plaintiff) initially brought this diversity action against Kim Y. Dawson (Defendant Dawson) for breach of guaranty. Doc. 1. By Order dated June 8, 2023, the Court directed Plaintiff to show cause why this case should not be dismissed for want of subject matter jurisdiction as Plaintiff did not properly allege citizenship for Plaintiff or Defendant Dawson. Doc 9. Plaintiff responded to the Order to Show Cause and moved for Clerk's entry of default against Defendant Dawson. Docs. 12, 13. The Clerk entered default against Defendant Dawson, but then Plaintiff moved to set aside the default and requested leave to amend the

Complaint to add a second defendant.  Doc. 17.  The Court held a hearing on the matter, vacated the default, and directed Plaintiff to file the amended pleading to add a party, new claims against the new party, and correct the jurisdictional allegations.  Docs. 20, 21.

On September 14, 2023, Plaintiff filed the Amended Complaint and now brings this diversity action against Defendant Dawson and Rainmaker Health Solutions, Inc. (Defendant Rainmaker) (collectively "the Defendants") for breach of guaranty and contract.  Doc. 23 (the Amended Complaint).  Defendants have not appeared in this matter and, therefore, Plaintiff again moved for Clerk's Entry of Default pursuant to Federal Rule of Civil Procedure 55(a).  Doc. 30.  The Clerk entered default and Plaintiff subsequently moved for default judgment against Defendants under Rule 55(b)(1) and Local Rule 1.10.  Doc. 33 (the First Motion).  The Court denied the First Motion because Plaintiff did not adequately address the basis for diversity jurisdiction with respect to the amount in controversy, nor did it address the elements of the relevant causes of action.  Doc. 34.

Plaintiff has since filed a Second Motion for Default Judgment and contends that the jurisdictional threshold is met.  Doc. 36 (the Second Motion).[1]  The Court, however, is still not satisfied that subject matter jurisdiction exists.

## II. Allegations and Evidence Regarding Amount in Controversy

Plaintiff, an equipment financing and growth funding company, alleges that in March 2022 it entered into a finance agreement with Defendant Rainmaker to advance funds for "certain optical equipment."  Doc. 23 at 2.  Plaintiff alleges that Defendant Dawson also executed a guaranty agreement to induce Plaintiff to "enter or extend certain financial accommodations with

---

[1] Plaintiff entitles the Second Motion as "Amended Application for Default Judgment."  Doc. 23. The Court denied the First Motion and, therefore, Plaintiff's second attempt is not an amendment.

- 2 -

Rainmaker." *Id*. at 3 (the March Agreements). In April 2022, the parties allegedly entered into another finance and guaranty agreement. *Id*. at 3-4 (the April Agreements). Defendant Rainmaker allegedly failed to remit payment and this case followed.[2] In the Amended Complaint, Plaintiff claims that as of the date of Defendants' defaults on the March and April Agreements the total amount due and payable to Plaintiff was $93,430.12. *Id*. at 4, 5.[3] Accordingly, it appears that the amount in controversy exceeds $75,000.00 and the case may proceed in federal court.

In the First Motion, however, Plaintiff stated that before it filed the Amended Complaint it already recovered and sold the collateral for $34,000.00 and, therefore, conceded that the principal amount due should be reduced by that sum. Doc. 33 at 10. The Court denied relief largely because the First Motion was not adequately briefed, and the Court *sua sponte* raised the issue of whether jurisdiction was present because the reduction significantly drops the amount below the jurisdictional threshold. Doc. 34 at 3.[4] Since it appeared that Plaintiff agreed that it could not

---

[2] Plaintiff also alleges that Defendant Rainmaker filed a voluntary petition for relief under chapter 11 in the United States Bankruptcy Court for the Middle District of Florida. Doc. 23 at 5 (citing case number 23-bk-447). Plaintiff claims that the filing of the bankruptcy case is also a default event under the March and April Finance Agreements. *Id*.

[3] Plaintiff alleges that as of the date of Defendant Rainmaker's default on the March Finance Agreement, the total amount due was $49,244.33. Doc. 23 at 4. As to the April Finance Agreement, Plaintiff alleges that $44,185.79 was due. *Id*. at 5.

[4] The Court looks to the Amended Complaint to determine if diversity jurisdiction exists. *See Cap. Auto Brokers, LLC v. Atl. Acceptance Corp.*, 2023 U.S. Dist. LEXIS 78168, at *7 (S.D. Fla. May 3, 2023) ("Given that the Amended Complaint replaced the original Complaint, the Court must review only the Amended Complaint to determine whether subject matter jurisdiction exists.") (citing *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007)).

Also, the fact that Plaintiff did not disclose the sale of the collateral until it filed the First Motion does not prohibit the Court from questioning the amount in controversy. Attacks on the Court's subject matter jurisdiction can be either facial or factual. *Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1232 (11th Cir. 2008) (per curiam). "[A] factual attack contests the [c]ourt's subject matter jurisdiction in fact, regardless of what the complaint says."

recover the amount alleged at the time it filed the Complaint, the Court questioned whether this case should proceed in federal court. *Id*. The Court raised a similar concern regarding the claimed interest, costs, and fees. It appeared that Plaintiff was also attempting to satisfy the jurisdictional prerequisite by factoring in attorney fees, accrued interest, and costs but did not provide legal authority or any analysis to support that position. *See* Docs. 23, 33.

In the Second Motion, Plaintiff confirms that due to the sale of the collateral, at the time Plaintiff filed the Amended Complaint the aggregate principal owed to Plaintiff was $59,430.12. Doc. 36 at 5, 7. Plaintiff attaches its Vice President's affidavit, and he attests that the collateral was recovered and on or about September 11, 2023, Plaintiff sold it for $34,000.00 resulting in the reduction of the principal amount owed. Doc. 36-1 at 4.

While the aggregate principal of $59,430.12 is clearly below the jurisdictional threshold, Plaintiff claims that the March and April Agreements also provide that Defendants shall be liable to Plaintiff for attorney fees and expenses incurred in connection with the enforcement of those contracts. *Id*. at 7. Plaintiff claims that the inclusion of this remedy in the March and April Agreements means that it is proper to include those amounts in the overall amount in controversy. In support, Plaintiff attaches its attorney's affidavit and contends that $30,835.00 in attorney fees and $916.11 in expenses should be added to $59,430.12. Docs. 36 at 7; 36-2.[5] Based on the

---

*Progressive Express Ins. Co. v. Big Man Movers Corp.*, 2016 WL 11580977, at *2 (MD. Fla. May 27, 2016) (citing *McElmurray v. Consol. Gov't of Augusta-Richmond Cty.*, 501 F.3d 1244, 1251 (11th Cir. 2007)). Regardless of the allegation in the Amended Complaint that the amount in controversy exceeds $75,000.00, the record before the Court shows that the amount of principal damages claimed is significantly less than $75,000 due to the recovery and sale of the collateral that occurred before the pleading was filed. *See* Docs. 33, 36, 36-1."

[5] Based on this computation, it appears that Plaintiff does not rely on interest to value the amount in controversy.

foregoing, Plaintiff asserts that subject matter jurisdiction is present because the amount in controversy is $91,181.23, inclusive of fees and expenses and this case should proceed.  Doc. 36 at 7.[6]

### III. Discussion

While Plaintiff has provided clarification on how it currently arrives at its jurisdictional calculation, the Court is still not persuaded that Plaintiff adequately pled or demonstrated that the amount in controversy was met at the pivotal moment in the case; the filing of the Amended Complaint.  Plaintiff is correct that its contractual right to collect attorney fees and expenses in the March and April Agreements has the potential to change the calculus.  Attorney fees are properly included if allowed for by contract[7] and there is no dispute that the March and April Agreements provide for entitlement to attorney fees and expenses in the event of a default and subsequent enforcement.[8]

But there are problems with Plaintiff's position.  First, as a preliminary matter, Plaintiff provides no legal justification for the fee amount claimed.  Specifically, the $30,835.00 and $916.11 sums include billing/expenses through December 1, 2023, even though Plaintiff filed the Amended Complaint in September 2023.  Doc. 36 at 7.  Plaintiff, therefore, suggests that fees can

---

[6] That calculation includes fees through December 1, 2023.  Plaintiff adds that the amount of fees through the filing of the Amended Complaint on September 14, 2023 amounts to $27,415.00 and, therefore, still brings the amount beyond $75,000.00.  Doc. 36 at 7 n.2.

[7] *Federated Mut. Ins. Co. v. McKinnon Motors, LLC*, 329 F.3d 805, 808 n.4 (11th Cir. 2003) ("The general rule is that attorneys' fees does not count towards the amount in controversy unless they are allowed for by statute or contract.").

[8] Section 5 of the March and April Finance Agreements states that the Borrower shall be liable for and shall pay Lender all expenses incurred by Lender in connection with the enforcement of Lender's remedies and Lender's attorney fees and expenses, "whether such fees and expenses arise in connection with a bankruptcy proceeding of Borrower and/or any Guarantor, or otherwise."  Doc. 23-1 at 2-3; 23-3 at 2-3.

keep accumulating until the threshold is met even though the case has already commenced, and the operative pleading has been filed. "While some courts include within the amount in controversy the total of attorneys' fees that could be awarded at the conclusion of the litigation, most courts within the Eleventh Circuit. . . consider only the amount of attorneys' fees that have accrued at the time of removal." *Walker v. United of Omaha Life Ins. Co.*, 2022 WL 2794301, at *2 (S.D. Ga. June 27, 2022); *see also Clayton Consulting Servs. Inc. v. Squire Dental Mgmt. LLC*, 2020 WL 6263756 (M.D. Fla. Oct. 23, 2020) ("[I]n this Court's view, the amount of attorneys' fees to be included in a calculation of the amount in controversy includes only the amount of fees incurred as of the time of removal, and does not include prospective amounts.") (citing *Shelly v. Target Corp.*, 446 F.Supp.3d 1011, 1014 (S.D. Fla. 2019)). Since Plaintiff provides no authority in support of the $30,835.00 figure and the law seems to militate against including this sum, the Court deems the Motion deficient.

Second, even though Plaintiff drops a footnote and states that the attorney fee amount through the date of the Amended Complaint was $27,415.00 (Doc. 36 at 7 n.2), the Court is still not satisfied that this case should proceed. Assuming $27,415.00 is the correct figure—again, Plaintiff offers no legal authority in support of that sum—the issue is that Plaintiff made only a general allegation in the Amended Complaint that it is entitled to attorney fees and costs. Doc. 23 at 7, 8. Plaintiff simply states that Section 5 of the March and April Agreements provide for attorney fees, costs, and expenses. *Id*. The March and April Agreements are attached, but there is nothing for the Court to rely upon in the pleading or its exhibits to support Plaintiff's current claim that the fees amounted to $27,415.00 at the time the operative pleading was filed.

Therein lies Plaintiff's biggest jurisdictional hurdle. "Courts cannot speculate and are especially vigilant when assertions on attorney's fees are self-serving." *MCM Retail Grp, Inc. v.*

*D4 Media Corp.*, 2024 U.S. Dist. LEXIS 81736, at * (M.D. Fla. Feb. 7, 2024) (citations omitted). "Most courts that do consider fees 'have found that unsubstantiated predictions of plaintiff's attorneys' fees are not sufficient to meet the jurisdictional requirement.'" *Donovan v. Liberty Mut. Ins. Co.*, 2016 WL 9525669, at *5 (M.D. Fla. May 19, 2016), *report and recommendation adopted by*, 2016 WL 9525421 (M.D. Fla. June 17, 2016). "[T]he Eleventh Circuit has noted, where, . . . 'the amount in controversy substantially depends on a claim of attorney fees, that claim should receive heightened scrutiny.'" *Donovan*, 2016 WL 9525421, at *2 (quoting *Cohen v. Office Depot, Inc.*, 2014 F.3d 1069, 1080 n.10 (11th Cir. 20000).

This case was not removed here, but the Court finds one court's discussion regarding unsupported fee claims to be instructive. In *Bouzoubaa v. Bank of Am.*, the defendant argued that the plaintiff's request for attorney fees pursuant to a Georgia statute should form a basis for the amount in controversy at issue. 2018 WL 1789806, at *5 (N.D. Ga. Jan. 19, 2018), *report and recommendation adopted by*, 2018 WL 1790025 (N.D. Ga. Feb. 23, 2018). The Northern District of Georgia rejected the argument as follows:

> Likewise, the Court is unpersuaded by Defendant's argument that the fact that Plaintiff seeks attorneys' fees in this action tips the balance in its favor. It is true that when a statute authorizes recovery of attorneys' fees, a reasonable amount of those fees may be included in the computation of the jurisdictional amount. Smith, 236 F.3d at 1305; *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1265 (11th Cir. 2000); Cohen, 204 F.3d at 1080. Because Plaintiff is seeking attorneys' fees pursuant to O.C.G.A. § 13-6-11, there is direct legal authority for the attorneys' fees and the reasonable amount of the attorneys' fees is included in the amount in controversy. *Smith*, 236 F.3d at 1305; *Byars v. Hartford Cas. Ins. Co.*, No. 4:09-CV-81 (CDL), 2009 U.S. Dist. LEXIS 87276, 2009 WL 3077128, at *1 (M.D. Ga. Sept. 23, 2009) (counting plaintiff's claim for attorneys' fees in calculating the amount in controversy); *Estate of Thornton ex. rel. Thornton v. Unum Life*, 445 F. Supp. 2d 1379, 1382 n.1 (N.D. Ga. 2006) (same). In this case, however, Defendant does not present any basis, factual or legal, for estimating the amount of attorneys' fees in controversy. See, e.g., *Donovan v. Liberty Mut. Ins. Co.*, No. 6:16-CV-157-Orl-22TBS, 2016 U.S. Dist. LEXIS 195150, 2016 WL 9525421, at *2 (M.D. Fla. June 17, 2016) (concluding that for purposes of calculating amount in controversy, the more reasoned approach is to calculate attorneys' fees as of the time of

removal). Thus, the Court's calculation of fees would be pure speculation, and the Court is not permitted to do so. *Porter v. MetroPCS Commc'ns, Inc.*, 592 F. App'x 780, 783 (11th Cir. 2014) (concluding that demand for attorneys' fees, which could equal 30% of recovery, and punitive damages, which could amount to nine times compensatory damages, could not assist in establishing the amount in controversy requirement without a base amount of compensatory damages to multiply and that any amount derived from these formulas would be "hopelessly speculative"); *Torbert v. Advanced Disposal Servs., Ala., LLC*, No. 15-00284-CG-B, 2015 U.S. Dist. LEXIS 159216, 2015 WL 7573014, at *4 (S.D. Ala. Oct. 21, 2015); *Oyce Holdings LLC v. United Way*, No. 1:14-CV-668-TWT, 2014 U.S. Dist. LEXIS 139931, 2014 WL 4956450, at *3 (N.D. Ga. Oct. 2, 2014) (declining to consider attorneys' fees in calculating jurisdictional amount because the Complaint did not allege a specific amount of fees and without a range or specific amount of fees, the court would be engaging in pure speculation regarding the total of attorneys' fees); *Smuland v. Unum Life Ins. Co. of Am.*, No. 6:16-CV-157-Orl-22TBS, 2010 U.S. Dist. LEXIS 132836, 2010 WL 1839106, at *1 (M.D. Fla. Apr. 30, 2010). As Defendant points out, Plaintiff has sought a number of different types of damages for his various claims, but without a baseline as to what some of these damages are or a basis for calculating them, this Court cannot say at this juncture that Defendant can show by a preponderance of the evidence that the amount in controversy requirement has been satisfied.

*Bouzoubaai*, 2018 WL 1789806, at *5.

Likewise, the Court finds that Plaintiff's blanket allegation regarding entitlement to attorney fees does not provide a basis to determine the amount in controversy and leaves the Court to guess at the appropriate calculation when the Amended Complaint was filed. This is especially troublesome because—according to the Amended Complaint—this case is intertwined with Defendant Rainmaker's bankruptcy proceeding. *See* Doc. 23 at 4. Since Plaintiff relies on the contractual remedy of attorney fees to proceed in this matter, it seems the Court should take into consideration that the March and April Agreements—attached to the Amended Complaint—also anticipate recovery of fees in bankruptcy proceedings. *See* Doc. 23-1 at 2-3; 23-3 at 2-3. Since Plaintiff provides nothing more than generalities in the pleading and no additional support along with the Amended Complaint, the Court cannot even begin to decide if the fees are recoverable in the instant action.

Overall, Plaintiff pled no reasonable estimate of the fees, nor did it offer any evidence to guide the Court's calculation of the outstanding fee amounts from the outset. In other words, taking into consideration that the collateral was sold, the Amended Complaint provides no basis for the Court to determine the amount of fees. *See Smuland*, 2010 WL 1839106, at *1 ("[The defendant] has not provided the requisite specific allegations or evidence of the amount of accrued attorney's fees at issue. . . [and] [the defendant's] reliance on its assumption as to the fees to be collected by [the plaintiff's] attorney is insufficient to meet [the defendant's] burden of proof."); *see Seymour v. Al Rahim, LLC*, 2023 U.S. Dist. LEXIS 126346, at *12 (N.D. Fla. July 20, 2023) ("[I]t is not facially apparent from the pleadings what amount of attorneys' fees and litigation expenses [the plaintiff] is entitled to recover in this action, and this [c]ourt refuses to speculate as to the same to find that the amount in controversy requirement is satisfied.") (citations omitted).

Third, to the extent it is proper for Plaintiff to now come forward upon a request for default judgment with evidence to support the amount in controversy claimed and prove that this case should remain in federal court—Plaintiff has not provided legal support for that proposition—the Court is still not convinced that Plaintiff has met its burden. As stated *supra*, Plaintiff claims that $30,835.00 should be added to the aggregate principal amount. In support, Plaintiff provides its attorney's affidavit along with a summary of fees. Doc. 36-2.

Again, the Court has several issues. First, most billing entries are dated after the commencement of the case, and several occur after the Amended Complaint was filed. *See id*. Plaintiff provides no legal basis to support the contention that *any* of these entries should be

included in the amount in controversy calculation.⁹  As such, the Motion is deficient.  *See* Local Rule 3.01(a).

Second, the summary of fees includes instances of block billing.  Block billing is generally impermissible, but these entries highlight another issue.  For example, on May 8, 2023—after the commencement of the action—attorney [ALH] billed in one block for correspondence, review of draft complaint, "attention to client's comments to same," and e-mail correspondence.  Doc. 36-2 at 6.  Part of the same entry includes "[m]ultiple e-mail correspondence with debtor's counsel re: post-bankruptcy company counsel and related matters."  *Id*.  Also, beyond block billing, Plaintiff includes a stand-alone entry for time spent on "[m]ultiple e-mail correspondence with MAK re: bankruptcy dismissal and forward approach."  *Id*. at 10.  As such, Plaintiff is attempting to include as a basis for jurisdiction in the instant case time spent on the bankruptcy proceeding—a separate action—but provides no legal basis for doing so.  The Court finds that without more the entries are improper.  *See Alac Enter. v. Geico Marine Ins. Co.*, 2022 WL 3009494, at *2(S.D. Fla. July 28, 2022) ("[t]he [c]ourt is unaware of, and [the defendant] fails to cite, any legal authority establishing that attorney's fees in related cases can be used to satisfy the amount in controversy in this case.").

Third, Plaintiff's inclusion of time spent in the bankruptcy proceedings leads the Court to the next concern.  It seems that the bankruptcy case is concluded, and Plaintiff was a party to that action as a creditor,¹⁰ and yet Plaintiff seeks fees that might be intertwined with the bankruptcy.

---

⁹ Plaintiff includes the statement in the footnote that the amount of attorney fees through the date of filing the Amended Complaint is $27,415.00 and apparently invites the Court to go through the entries to deduct for time billed prior to September 14, 2023—the date the Amended Complaint was filed.  It is Plaintiff's burden to produce the evidence and calculations necessary for the Court to determine the amount in controversy is met.

¹⁰ On March 22, 2023, Plaintiff filed a notice of appearance for notice filed on behalf of "Creditor LEAF Capital Funding, LLC."  Case No. 6:23-bk-447 (Doc. 46).

The March and April Agreements appear to permit fees in the event Defendants filed a bankruptcy petition and the Court has nothing before it to show whether fees were recovered—or ordered through judgment or otherwise—in that bankruptcy action. The same holds true for the principal aggregate sought. The bankruptcy proceeding was dismissed *before* Plaintiff filed the Amended Complaint, but to what end? Plaintiff did not disclose in the Amended Complaint that it had sold the collateral and the Court is left wondering if Plaintiff was successful in any regard in the bankruptcy matter. Again, when an amount in controversy depends substantially—as it does here—on a claim for attorney fees, the claim should receive heightened scrutiny. *Cohen*, 2014 F.3d at 1080 n.10. So far, Plaintiff's claim does not withstand that review.

Based on the foregoing, it is **ORDERED** that Plaintiff's Motion (Doc. 36) is **DENIED without prejudice**. If, in compliance with Federal Rule of Civil Procedure 11, Plaintiff can establish the Court's jurisdiction in this case, Plaintiff must file a renewed motion for default judgment by August 5, 2024. Failure to file such a motion within the time provided may result in dismissal of this case without further notice.

**ORDERED** in Orlando, Florida on July 19, 2024.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE